*894 OPINION.
Tiummell :
The respondent has increased the income reported by the petitioner for 1920 by $116,650. Of this amount $16,650 represents the value at $3.33 per share of the 5,000 shares of the common stock of the Day-Elder Motors Corporation, the certificate for which was issued to the petitioner in January, 1917. The remaining $100,000 is composed of $10,000 cash, the face value of two negotiable notes for $15,000 and $25,000, respectively, and eight nonnegotiable notes of $6,250 each.
In regard to the stock, petitioner contends that it became his absolutely prior to 1920, that there was no transaction in 1920 regarding the stock which would make it taxable to him in that year, and that all that was done in 1920 was the rendering by the court of a decision that the conditions and limitations appearing on the certificate of stock were null and void.
We have found that in January, 1917, in accordance with the contract of December 26, 1916, between the petitioner and the Day-Elder Motors Co. the petitioner received a certificate for 5,000 shares *895 of stock. Two of the conditions under which the stock was issued were: First, that should the petitioner perform all of the terms and conditions of the agreement to be performed by him, and the corporation sell or receive within the first 3-year period orders for at least 1,400 motor truck chassis, then such proportional part of the shares of stock issued to the petitioner should thereupon become his property unconditionally as the number of motor truck chassis sold and delivered bore to 10,000; second, that should the petitioner cease to be employed by the corporation without any fault of his own, the stock which had not theretofore become his property unconditionally should immediately and on such event become his property unconditionally. About July, 1919, the petitioner was discharged by the corporation without any fault on his part. The corporation brought an action to recover the stock. In April, 1920, a decree was entered in favor of the petitioner. The corporation appealed and subsequently during the year the decision of the lower court was affirmed.
Since the contract contained the provision whereby upon the petitioner’s separation from the service of the company without fault, on his part, the stock was to become his and in view of the decree and decision of the courts, we are of the opinion that the stock was income to the petitioner in a year prior to 1920. The situation in regard to this point is the converse of that in Farmers National Bank of Rome, N. Y., Executor, v. Commissioner, 6 B. T. A. 1036, and also that in the case of the Malleable Iron Range Co. v. United States, 62 Ct. Cls. 425. Prior to 1920 the petitioner had the stock. It became his absolutely under the terms of the contract when the company discharged him without any fault on his part. There was a contingency that the court would hold that he was not entitled to it, but this contingency never happened. On the other hand, the court held it was rightly his when the company, without fault on his part, discharged him. The stock belonged to the petitioner prior to 1920.
Belative to the $10,000 in cash received by the petitioner on December 31, 1920, the respondent admits that it was reported in the petitioner’s returns filed. The addition of this amount by the respondent to the income reported in the returns was therefore erroneous.
In regard to the notes, the controversy resolves itself into the question of whether the notes received by the petitioner under the circumstances involved here constitute taxable income for the year 1920. The petitioner concedes that the actual cash he received as a result of the settlement of December 31, 1920, is income. The $10,000 in cash received in 1920 was reported by him in his return for that year, and the moneys received by him during 1921, 1922, and 1923 in payment of the notes have been included by him in his returns as income for the years in which received. His contention is that *896 inasmuch as he keeps his books on the cash receipts and disbursements basis, he received income from the settlement only when and to the extent that he received cash.
Section 213 of the Revenue Act of 1918 provides:
That for the purposes of this title (except as otherwise provided in section 233) the term “gross income”—
(a) Includes gains, profits, and income * * * of whatever kind and in whatever form paid * * *. The amount of ail such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to he properly accounted for as of a different period * * *.
Section 212 (b) of the same Act provides:
The net income shall he computed upon the basis of the taxpayer’s annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income.
We have heretofore considered the question as to what time property received in compensation for personal services constitutes income. In the Appeal of Minal E. Young, Executor, 6 B. T. A. 472, we said:
We have held that the question whether the receipt of property as compensation for services results in taxable gain at the time received is dependent on the fact whether such property has a market value at that time. If it has no market value when received, no taxable gain results from its receipt. Appeal of William J. Conlin, 1 B. T. A. 472; Appeal of M. J. Sullivan, 2 B. T. A. 1012. In such eases the gain subject to tax i-s realized when the property is sold or exchanged for other iDroperty that has a market value. The transaction resulting in taxable gain or profit is not completed until such time. If the property had a market value when Curtis received it for services, the transaction would then have been completed and would have resulted in gain at that time.
We have also had occasion to consider the question of whether notes constituted property, and in the Appeal of Aaron W. Wolfson, 1 B. T. A. 538, we held that promissory notes are property.
When a taxpayer keeps his accounts and renders his returns on the basis of cash receipts and disbursements, the tax is levied only upon gains, profits and income received in money or in that which is the equivalent of money, that is, something having an exchangeable or reasonable market value.
On the question of the market value of the notes, the evidence, briefly summarized, is as follows:
The Union National Bank, which by the end of 1920 had loaned an amount equal to 10 per cent of its capital stock to the corporation, *897 declined to make further loans in that year. The bank declined to make loans to the corporation unless the corporation’s notes were endorsed by its president and treasurer and accompanied by security. In 1920 the corporation was in need of funds and attempted to borrow money on its notes in the open market but was unable to do so. The corporation in 1920 undertook to borrow the $100,000 to pay the petitioner but was unable to do so and was unable to borrow even the $15,000 to make the payment due in January, 1921. Not only was the corporation in need of funds in addition to the money it sought with which to pay the petitioner, but late in 1920 it received a notice from the collector of an additional income-tax liability of $119,000 which it did not have the cash to pay. There was also evidence to the effect that in 1920 the corporation was insolvent, although this fact was not ascertained until 1926 when it went into the hands of receivers.
We have considered all the evidence and, in our opinion, the preponderance of the evidence is to the effect that the notes did not have a market value when received in 1920 and were not the equivalent to cash. The receipt thereof in 1920 therefore did not constitute taxable income.
In view of our opinion that the notes did not constitute taxable income, it becomes unnecessary to decide the remaining question with respect to the attorney fees.
We think that the manner of reporting the income adopted by the petitioner, under the facts of the case, was correct.
Reviewed by the Board.

Judgment will be entered after notice of 15 days, under Rule 50.